**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FILED
97 JUN 10 PM 3:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **PAMELA J. LAWRENCE,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-95-N-2656-S |
| **OLSTEN KIMBERLY HEALTH CARE,** | ] |
| Defendant(s). | ] |

ENTERED
JUN 10 1997

**Memorandum of Opinion**

### I. Introduction.

In this employment discrimination action, the plaintiff, Pamela J. Lawrence ("Lawrence"), brings claims *pro se* against the defendant, Olsten Kimberly Health Care ("Olsten"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Equal Pay Act, 29 U.S.C. § 206 *et seq. Plaintiff's Amended Complaint* at 1. Specifically, Lawrence asserts that Olsten discriminated against her based upon her race when it reduced her hourly pay, when it failed to reimburse her for mileage driven on her personal automobile in the course of business, and when it terminated her employment in July 1994. *See Pretrial Order of April 23, 1997* at 2-3. She further contends that she was subsequently reinstated and again discharged in October 1994 in retaliation for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 3.

Pursuant to the plaintiff's representations made in the April 2 and 14, 1997, pretrial conferences and the subsequent order entered on April 23, 1997, Lawrence brings claims



of racial discrimination only and no longer contends that the defendant violated the Equal Pay Act. *See id.* at 2-3. The motion has been fully briefed by the parties and, upon due consideration, will be granted.

## II.    **Statement of Facts.**[1]

The plaintiff began working for a company in September 1991 that subsequently merged with another company to form Olsten in April 1993. It was at that time that Lawrence became employed by the defendant, directly reporting to Becky Stovall. Lawrence's title was initially Personal Care Worker and was later changed to Home Health Aid ("HHA"), as were the titles of all other Personal Care Workers. The vast majority of HHAs employed by Olsten at the time the plaintiff worked there were black females. This demographic continues to be true presently. HHAs, including the plaintiff while she was employed by Olsten, are assigned to work for various clients on a weekly basis. The hours worked weekly by each HHA, however, do not necessarily amount to forty. Weekly hours fluctuate depending upon a number of variables, including the number of cases Olsten has amassed at a given time and each HHA's availability. Lawrence typically worked thirty to forty hours per week while employed by the defendant.

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). Exhibit D, the court's summary judgment scheduling order, was attached to and made part of the court's December 17, 1996, scheduling order. The plaintiff was again reminded of the requirements of Exhibit D and the result of ignoring those requirements in an order entered on April 11, 1997. Exhibit D requires that any party opposing the motion for summary judgment "shall submit a statement of facts containing . . . a response to the movant's claimed undisputed facts." *Exhibit D* at 3. Exhibit D further provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." *Id.* at 4 (emphasis and footnote omitted). The plaintiff failed to address any of the defendant's proposed undisputed facts; therefore, Olsten's statement of facts will be deemed admitted for purposes of the motion.

2

HHAs employed by Olsten are assigned to work either "on the Medicare side" or "on the private side," but not both. The court has determined that such terminology apparently indicates the entity remitting payment to Olsten for the care of a given client -- either Medicare or the client personally or his private insurer. Typically, the defendant has few open HHA positions on the Medicare side, and Lawrence worked on the private side throughout her employment with Olsten. If a Medicare patient requests services for which the government will not reimburse the defendant, Olsten simultaneously assigns Medicare HHAs to provide the approved services and private duty HHAs to perform the unapproved services. In that instance, the private duty HHA is paid on a per-visit basis and not by the hour.

As a private duty HHA, Lawrence was not eligible to receive reimbursement for mileage driven on her personal automobile unless she worked outside the county boundaries. Medicare HHAs, however, are reimbursed for mileage. These different reimbursement policies apply even when a private duty HHA and a Medicare HHA perform services simultaneously for the same client. The plaintiff testified at deposition, however, that she understood Olsten's mileage reimbursement policy to change when a private duty HHA worked with a Medicare client. *Plaintiff's Deposition* at 100.

On February 16, 1994, the plaintiff's supervisor, Becky Stovall, spoke with the plaintiff regarding Lawrence's habit of filing paperwork late. Stovall completed an Employee Contact Sheet regarding the discussion. She executed another Contact Sheet on April 22, 1994, regarding a client's complaints about the plaintiff's performance. On that Contact Sheet, Stovall indicated that Lawrence's paperwork continued to be remitted two weeks

3

late, and she placed the plaintiff on final warning, stating that "any infringement of company policy, or failure to call availability [once a week] will result in immediate termination." *Id.* at Ex. 9. Lawrence refused to sign the Contact Sheet. Stovall evaluated the plaintiff on May 13, 1994, and the plaintiff received the evaluation on May 16, 1994. Stovall opined that Lawrence was "very limited in the cases she accepts" and that she needed to improve the timeliness of her paperwork submissions and her availability for assignment. *Id.* at Ex. 11.

HHAs employed by Olsten are paid at varying rates, depending on the client for whom services are rendered. During the plaintiff's employment at Olsten, she received the same rate of pay as other HHAs working for a particular client at or around a particular time. On April 25, 1994, Lawrence questioned Ruby Lively, a member of Olsten management, regarding her pay rate and conveyed her belief that she earned seventy-five cents per hour less than others. The plaintiff said nothing about race or race discrimination at that meeting. She testified in deposition that Lively became angry and told the plaintiff she should not question Lively's authority. *Id.* at 178. Lawrence asserted that following the meeting with Lively, Olsten reduced the number of assignments it gave her, *id.* at 189-90, but she also testified that prior to the meeting, she was assigned to provide services for a sole client, Mr. Parker Smith, and that she continued to work for Mr. Smith until approximately one month after the meeting. *Id.* at 191. She further testified that after she no longer provided care to Mr. Smith, she worked for four other clients as well, *id.* at 191-92, and that one assignment ended on either June 30 or July 1, 1994. *Id.* at 201. The

plaintiff contends that she was terminated on July 5, 1994, because Olsten stopped giving her work assignments. *Id.* at 201-02.

In early July 1994, the plaintiff applied for Project Share, a program that helps individuals pay their electric bills. She informed the program about certain medical problems she was experiencing and submitted a letter from her doctor, David S.H. Bell, M.D., dated July 6, 1994. In that letter, Dr. Bell stated that the plaintiff "ha[d] not been working lately due to her recurrent migraine headaches." *Id.* at Ex. 14. Lawrence testified in her deposition, however, that she did not inform Project Share that her health prevented her from working at that time. *Id.* at 209-10.

Lawrence filed a charge of racial discrimination with the EEOC on July 14, 1994, against Olsten, stating that she had been discharged on July 5, 1994. She averred that the defendant failed to reimburse her for mileage but reimbursed all other employees, reduced her wages and paid white employees more than it paid her, and that she had questioned Olsten about its actions. She further asserted that the defendant refused to assign her further work although it did not remove other black employees from the schedule and had hired other employees, both black and white, and that Olsten gave her no reason for her discharge. *Id.* at Ex. 12. During Lawrence's deposition testimony, she reiterated her contention that other black employees were reimbursed for mileage and that Olsten had subsequently hired more black employees. *Id.* at 91-92, 206-07. She also stated she does not know the pay rates for other employees or which employees were being reimbursed for mileage. *Id.* at 248.

On July 15, 1994, the plaintiff wrote to William P. Costantini, Senior Vice President of Olsten, advising him that she believed she had been "treated unfairly and subjected to adverse treatment by management official [sic] at this facility." *Id.* at Ex. 13. She summarized the April 24, 1994, meeting with Lively regarding her pay rate and complained that since that time, she had only received one new case.

On July 18, 1994, the plaintiff returned to the defendant's offices and spoke with her supervisor, Becky Stovall. She requested a letter from the company indicating she had been laid off. Stovall informed her that the company had not terminated her employment. Lawrence subsequently left her equipment at the office and departed. Sometime between July 18 and August 1994, the EEOC notified the defendant of Lawrence's charges of discrimination. In early August 1994, the plaintiff called and informed the defendant that she was available for work. She subsequently attended a meeting with Stovall, Lively, and Terry Rogers[2] in which her employment status was discussed. Lawrence testified in deposition that her EEOC case worker had advised her to take a witness with her to the meeting but that once they arrived, the Olsten employees would not allow the witness to attend the meeting. *Id.* at 241-42.

On September 16, 1994, Stovall learned that a client's husband had called Olsten, complaining about the plaintiff's lack of care and requesting that Lawrence not return. Stovall thus placed the plaintiff on three months probation and prepared an Employee Contact Sheet to document the disciplinary action. Stovall stated on the Contact Sheet that

---

[2] Mr. Rogers is a member of Olsten management.

6

if Lawrence "fail[ed] to communicate with her supervisor regarding patient problems or complaints from clients indicating lack of care," the plaintiff's employment might be terminated. *Id.* at Ex. 19. Lawrence refused to sign the Contact Sheet but agreed in deposition that the client at issue and the client's husband had complained about her.

Stovall later learned that a registered nurse had called regarding the plaintiff's performance. The nurse observed Lawrence while the nurse was making a supervisory visit to a client and stated that Lawrence had gone outside and was unavailable to assist the client. Stovall telephoned the client's wife on October 21, 1994, and confirmed that the client had complaints regarding the plaintiff's performance. Olsten thus terminated Lawrence's employment effective immediately for violating the terms of the probationary period.

On January 6, 1995, Lawrence filed a second charge of discrimination with the EEOC, asserting discrimination based upon retaliation for her complaints of racial discrimination both to Olsten and to the EEOC. The EEOC issued the plaintiff a notice of right to sue on August 1, 1995, and Lawrence filed the instant action on October 16, 1995.

### III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law

8

will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference

9

but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.  Discussion.

The plaintiff contends that Olsten discriminated against her on the basis of race in three ways: (1) when it reduced her hourly pay rate; (2) when it failed to reimburse her for mileage driven on her personal automobile in the course of official company business; and (3) when it discharged her in July 1994. She further avers that the defendant retaliated against her for filing charges of discrimination with the EEOC by terminating her employment a second time in October 1994.

A plaintiff who alleges disparate treatment based upon race under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Likewise, section 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 583 n. 16 (1984). The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

### A.  Direct Evidence and Statistical Evidence.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). A second means by which Lawrence may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of race discrimination on the part of Olsten. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (age discrimination case). The plaintiff has presented no direct evidence or statistical data; therefore, she must attempt to establish a prima facie case of discrimination through circumstantial evidence.

### B.  *McDonnell Douglas* Test.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[3] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory

---

[3] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

11

reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate,

12

non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

### 1. Pay Rate and Mileage Reimbursement Claims.

The plaintiff contends that Olsten discriminated against her on the basis of race when it reduced her hourly pay rate and failed to reimburse her for mileage driven on her personal automobile in the course of company business. In order to establish a prima facie case of such claims of disparate treatment, Lawrence must demonstrate that: "(1) she is a member of a protected class, (2) was similarly situated with a person outside of the protected class, but (3) was denied a condition of employment afforded that person." *Thompkins v. Morris Brown College*, 752 F.2d 558, 562 n. 7 (11th Cir. 1985). The plaintiff cannot meet this burden with respect to either claim, however, for she has not established the second or third elements of the prima facie showing.

With regard to the pay rate claim, the undisputed facts demonstrate that Lawrence has no specific knowledge of her white coworkers' pay rates, and she has presented no evidence from which the court may make such a determination. Furthermore, it is undisputed that the majority of Olsten HHAs are black. She therefore cannot establish a comparator for purposes of making out a prima facie case. With regard to the mileage claim, the undisputed facts establish that only those HHAs working on the Medicare side were eligible for mileage reimbursement, while private duty HHAs were not so eligible.

13

These rules remained applicable regardless of the type of patient for which the HHA performed services -- that is, Medicare or private pay. The plaintiff was at all times during her employ with the defendant a private duty HHA and thus was not eligible for mileage reimbursement. The fact that she misunderstood Olsten's mileage policy is immaterial. Furthermore, and most importantly, she has again failed to establish any specific white comparator working as a private duty HHA who received mileage reimbursement and has presented no evidence from which the court may make such a determination. Accordingly, as the plaintiff has failed to establish a prima facie case with regard to either disparate treatment claim, the claims will be dismissed.

### 2.  **Discharge Claim.**

Lawrence also contends that Olsten discriminated against her on the basis of her race when it terminated her employment in July 1994. To make out a prima facie case for this claim, Lawrence must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position she held at Olsten; (3) her employment was terminated despite her qualifications; and either (4) Olsten replaced her with a person outside the protected class, *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995), or (4) after her termination, her position remained open and Olsten continued to seek applicants of similar qualifications. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996). The plaintiff has not met her burden.

The facts are unclear as to whether Lawrence's employment was actually terminated in July 1994. The plaintiff clearly believes that it was, as evidenced by her deposition testimony and July 14, 1994, charge of discrimination with the EEOC. The evidence

14

submitted by the defendant, however, demonstrates that Olsten management informed Lawrence on July 18, 1994, that her employment had not been terminated. Instead, the defendant believed that Lawrence resigned on July 18, 1994, when she turned her equipment in to the corporate offices. Viewing the facts in a light most favorable to the nonmoving party, however, the court must presume that the plaintiff was in fact discharged on July 5, 1994.

Lawrence has not established, however, either that she was replaced with a person outside the protected class or that the position remained open. She simply presents no evidence that could be viewed to address either of these two elements of her prima facie case other than her own conclusory statements. Her belief that she was discriminated against, however, is insufficient to establish a prima facie case of such action on the part of the defendant. Therefore, as the plaintiff cannot meet her initial burden pursuant to the *McDonnell-Douglas* analysis, the discharge claim will be dismissed.

### 3.     **Retaliatory Discharge Claim.**

Finally, the plaintiff avers that Olsten retaliated against her for filing her July 15, 1994, charge of discrimination with the EEOC by terminating her employment a second time in October 1994. Title VII protects employees from discrimination by employers because the employee has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff need not prove the actual existence of those unlawful employment practices; rather, he need only have a reasonable belief that the defendant engaged in such practices. *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 1000 (1982).

15

In order to make out a prima facie case of retaliatory discharge, Lawrence must show that (1) she was engaged in statutorily protected expression, (2) Olsten took adverse employment action against her, and (3) there was a causal link between the protected expression and the adverse action. *Lindsey v. Mississippi Research and Dev. Ctr.*, 652 F.2d 488, 491 (5th Cir. Unit A 1981).

In the Eleventh Circuit, "statutorily protected expression" includes charges of discrimination filed with the EEOC, 42 U.S.C. § 2000e-3(a), formal and informal complaints to an employer, *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989), written protests, *Smalley v. City of Eatonville*, 640 F.2d 765, 769 (5th Cir. Unit B 1981), and warnings from employers not to complain about alleged discriminatory practices. *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992).

The plaintiff filed a charge of discrimination with the EEOC and complained to her employer regarding racial discrimination. Nevertheless, while Lawrence has established that she was engaged in statutorily protected expression, she cannot make out a prima facie case of retaliatory discharge because she has presented no evidence suggesting a causal connection between this expression and her October 21, 1994, termination. The undisputed facts indicate that between the time she filed the EEOC charges in July 1994 and October 21, 1994, a client complained about the quality of the plaintiff's work, and Stovall thus placed the plaintiff on probation. When another client also complained about Lawrence's performance, Stovall terminated the plaintiff's employment for violating the terms of the probationary period. Thus, even if the plaintiff could make out a claim of retaliatory discharge, the defendant has presented a legitimate, nondiscriminatory reason

for its action. The burden would thus shift back to Lawrence to establish that Olsten intentionally discriminated against her by demonstrating that Olsten's proffered reason is merely pretext. This she cannot do, for she has offered no evidence other than her own conclusory allegations to make such a showing. Such allegations are insufficient to meet her burden. *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996). Accordingly, the claim will be dismissed.

**V.   Conclusion.**

The defendant's motion for summary judgment will be granted in full and all claims dismissed. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 10th of June, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE